Thank you, your honor. Good morning, your honors. In the case at hand, petitioner was convicted of mail fraud under 18 U.S. Code Section 1341. Petitioner's sole count of conviction alleged that he devised an artifice and scheme to defraud a mortgage company, which was executed through the issuance and mailing of a check in the amount of $4,356. Although petitioner agreed to pay restitution for a significantly larger amount, the loss to the victim tied to the count of conviction was well below the $10,000 threshold required to deem the petitioner's conviction an aggravated felony. The board in this case committed legal error by finding that petitioner was convicted of an aggravated felony when his record of conviction clearly establishes that his conviction resulted in a loss of less than $10,000. Petitioner's plea agreement includes express stipulations with the government that the loss as a result of the count of conviction is $4,356. Ms. Shealy, let me ask you a question. Assume for a moment that there was no plea agreement as to the amount of loss. There's certainly evidence in this record that the crime of conviction caused a much larger loss. So is your argument based entirely on the fact that the plea agreement had this number in it? Yes, your honor. But beyond that, binding case law demonstrates that when you are determining the loss to the victim for purposes of an aggravated felony analysis, everything that you can look at needs to be tied to the specific count of conviction. So while the petitioner... Well, that's why I'm asking the question. So let me make my question clear. Looking at this record, I could conclude that a much larger number than the number in the plea agreement was a loss tied to the account of conviction. So it seems to me your argument must be that the plea agreement limits review to the amount specified there. Am I mistaken about that argument? Yes, your honor. You're correct. And we also believe that if we were to conclude that the petitioner is liable for his uncharged and unconstitutional conduct, it would lead to results where plea agreements would become impossible for statutes such as the one he was defending under, because a defendant's liability could never be limited beyond the entirety of his pledge. Right. Putting aside that argument, and we're having a little bit of audio difficulty, so I'd ask you to either speak louder or get closer to your mic. Why... The way I read the Supreme Court's decision in, and now I'll mispronounce the name, Nihuan, it seems to tell us to look at the entire record to determine the loss from the account of conviction, not just any one particular portion of it. So how do you get around that case? Right. So while Nijibar does introduce the circumstance-specific approach to loss determination, it still holds that the review must be tied to the specific counts covered by the conviction. The monetary threshold applies to the specific circumstances surrounding an offender's commission of a fraud and a seat crime on a specific occasion. And I would advise your honor that, importantly, Nijibar was found to be an aggravated felon in that case precisely because of the amount of loss that identified in his conviction record that was tied to this particular comment. It is, counsel, it is difficult to hear you. At least I'm having difficulty, but it seems that when you're speaking directly into the microphone as opposed to looking down, it is improved. So let me ask this. I appreciate your argument with respect to the other mortgage lenders here other than SIB. But what about with respect to SIB mortgage itself? Because there, he seems to have pled guilty to a scheme or artifice to defraud SIB. And we know that SIB sustained losses on the loan of close to a million dollars. So how do you make the argument with respect to SIB in particular? Right, that's correct. And as you can see in the record, the immigration judge did expand petitioner's liability to include the entire loan that was fraudulently obtained from SIB. But this court in particular has deferred to the board's exceedingly limited definition of a single scheme of misconduct, particular in Sisoni versus Whitaker. The board has held that a single scheme of criminal misconduct ends when an alien has performed an act, which in and of itself constitutes a crime. The board did not find a single scheme, even if the additional offense may closely follow the other, be similar in character, and even be part of an overall plan of misconduct. I think that if we're to accept that petitioner was convicted of a larger scheme, it would necessarily be a separate, complete crime. That's the part that I'm not sure about, because just the nature of what he did and what he pled guilty to, there was no sort of separate and independent scheme to obtain $4,000 that was mailed to him. The scheme was to obtain a fraudulent loan, and as part of that, he got the $4,000 check. So it just seems to me that there could be cases, say, involving check cashing, where the conduct is more serial in nature. Those may present a different issue, but how can you disaggregate the $4,000 mailing of the check from the broader scheme here? So the way that we disaggregate it is because it's very clear in the stipulations that were agreed to by petitioner and to the government that he was only being charged and convicted for the single count of mail fraud, which was the check of less than $5,000. I think it's important, especially in an immigration consequences context, that a defendant be able to rely on the explicit language within a plea agreement, because in this case, the petitioner has given up his constitutional rights when he agreed to the plea agreement, and he did all of that in the hopes that he would be able to remain in the United States. What is... I'm sorry, Judge Hurwitz, please. What is the offense of conviction? Yes, so the offense of conviction is mail fraud under 18 U.S. Code Section 1341. It alleges that he devised an artifice and scheme to defraud a mortgage company, and that artifice was executed for the issuance and mailing of the check in the amount of less than $4,000. So I'm looking at the superseding information. The superseding information doesn't charge him with an overarching scheme to defraud SIB mortgage. It charges him with a scheme for the purpose, and for the purpose of executing that scheme, he knowingly caused a check in the amount of $4,000 to be issued. Isn't that it? Well, Your Honor, I think that what is most important here is the explicit language in the plea agreement. And if we go back to Chang v. INS and also to Nijuan, it's clear that when you are calculating the loss of the victim under an aggravated felony analysis, you can only look at what is tied to the specific count of conviction. And I respectfully would like to... Let's hear from the government. Good morning, Your Honors. May it please the court. My name is Julie Iverson, and I represent the United States. The agency correctly determined under the circumstance specific approach set forth in Nijuan that Mr. Maka was convicted for an aggravated felony fraud offense under 8 U.S.C. 1101-A43-M1, where the evidence, including the superseding information, the plea agreement, and the judgment demonstrate his conviction for mail fraud involved the loss to a victim or victims in excess of $10,000. Contrary to Mr. Maka's argument, the agency was not limited to the $4,356.78 transaction in calculating whether his offense reached the $10,000 threshold. Ms. Iverson, what do you do with the language in Chang that says, even if we were... And Chang was, of course, a categorical case. But it said, even if we were allowed to go past the Shepard documents, we couldn't because the plea agreement stipulates an amount of loss. Is that still good law? Your Honor, Chang was abrogated by Nijuan. Well, I understand that Chang's application of the categorical approach was aggravated by Nijuan. I'm asking a separate question. There seems to be, and maybe it's dictum in Chang that says, we're applying the categorical approach and the elements don't match up and we're done. But even if we could go past, even if we were allowed to look broader, more broadly in the record, we wouldn't because the plea agreement stipulated the amount of loss. And Nijuan doesn't really deal with that issue expressly. So my question is, is that part whether it's dictum or not still valid? Your Honor, I don't think so. I think that Nijuan clarified the landscape of how you look at the $10,000 loss. And Nijuan says that you look at a, you employ a circumstance, a specific approach. You look at the specific way in which an offender committed the crime on a specific occasion. You look at the conduct involved in the commission of the offense of conviction. Right. Judge Hurwitz is getting in. I have a similar question. Is, let's imagine the plea agreement says one thing and it's crystal clear that the petitioner was pleading guilty to a fraud of less than $10,000. But then you have some other documents like the superseding information and maybe some sentencing related materials that indicate he committed some other kinds of frauds that exceed $10,000. So there's essentially a conflict. At that point, would you agree that it's the plea agreement is what governs? I think if the plea agreement did not have the additional language that's in Mr. Maka's plea agreement, which indicates that the actual loss was in excess of $10,000, the trans in his plea agreement, the transaction that utilized the mail was the $4,300 figure. But there's also language in that plea agreement, which was not contained in the plea agreement that was in Chang that talks about how there was a scheme that he devised an artifice or scheme and that there was an actual loss to a lender or lenders that was in excess of the $10,000 amount. Also, your honor, Judge we get $4,000,000, $8,000,000. What do you think is the right number here? Well, I think that at a minimum, it would be the $962,000 loss to SIB mortgage. There's also, you can look at the restitution amount, which was $8,000,000. You can look at the amount, the restitution that Mr. Maka agreed to in the plea agreement, which was over $4,000,000. But even if you look at the lower amount... If you do that, aren't you getting away from the offense of conviction? Well, underneath the one, you can look at the circumstances, the circumstances surrounding the commission of the crime must be considered according to the situation. Of course, and that's talking about the sources of proof, but it doesn't expand what the offense of conviction is. The offense of conviction is what it is. Here where you have language that says that this was a part of a broader scheme, there's cases that the government's brief cites at pages 17 to 19 of our brief, where there was a larger scheme and where there was a single transaction that was under the $10,000 threshold, where the plea agreements and the superseding information indicate that there was a larger scheme, then the court or the agency can look at the circumstances surrounding that scheme. Right. It depends because look at the superseding information. It does talk about an artifice and scheme to obtain money. And then it says for the purpose of executing this artifice and scheme did knowingly cause a check in the amount of $4,000 to be issued. It didn't say as part of executing this artifice and scheme, it said for the purpose of. So it seems that the crime charged in the superseding information is the one involving the check for $4,300. Wouldn't you agree with that? I would respectfully disagree. I think that it's the fraudulent mortgage loan transactions and that the transaction involving the mail for the amount $4,356 was part of that scheme. Right. But this is a mail fraud case, so don't we have to limit it to what was done through the mail? But when looking, when analyzing whether the requisite $10,000 loss was met, you can look at the circumstances surrounding the commission of the offense. I'd also note that. The circumstances surrounding the commission of the offense is not the offense. That's relevant conduct, sure. And he could be tagged with it under 2B1.1 for guidelines calculations and he could be tagged with it for restitution, but that's not the offense. So let me ask Judge Feinerman's question in a different way and see if you can help us. The offense that's being alleged here is getting this $4,000 check or whatever it is, $4,300 check. Did the obtaining of that $4,300 check cause greater loss to the bank? It's, I believe it's part of the, it's part of the loss. Well, that's my question. In other words, I can, I suppose I can steal a dollar from you and because it's your only dollar, you starve. And therefore, even though I'm being charged with stealing a dollar, the loss that I've caused is greater than the dollar. So I'm trying to figure out here whether or not obtaining this check caused a greater loss than simply the amount of the check. And I'm not familiar enough with the, with the allegations about the scheme to answer that question. Can you? I'm not sure it caused a greater loss or if it was just a transaction that was part of the overall scheme that caused the eventual actual loss. Let me tell you, let me tell you in large what concerns me about the government's and see if you can respond to it. And you're not, you're obviously it's not the same lawyers in both cases, but the government made a deal with Mr. Maka. He's not arguing estoppel. So I don't know what the facts of the deal were, but they stipulated that he committed a lesser crime than they might've convicted him of and stuck a loss amount to it. And now the government's trying to say, well, we, yeah, we did that in order to get you to plead guilty, but now we want to deport you. Now it's not the same lawyers and I'm not blaming anybody in it, but it does seem a little unfair. Respond to that concern. If you would. Well, I think that there's also language in the plea agreement that, that indicates that, that the loss is not limited to the loss of $4,356.68 resulting from the count of conviction. It's the loss sustained by the lenders in connection with the following loans. I also note that in the judgment at, at page 124 of the record, it lists the title and section of the offense being 18 USC, 1341, the nature of the offense, mail fraud. And it lists the date that the offense ended as 2005. So the, the, the check was cut by Fidelity National and sometime between July to November, 2001. So I just want to point out that the, that the judgment itself has the offense end date of 2005, 2005 is the year that the, that the last fraudulent mortgages were obtained. But I think with respect to your concern about, I don't, I don't think he's making necessarily an unstoppable argument right now, but there's language that talks about the actual loss sustained by the lenders being well over the $10,000 amount. Your view is that in effect, this, this plea agreement says, look, this is, this is a plea agreement and we made a deal with you so you won't get as big a sentence you might otherwise get, but you're recognizing that the loss was really larger. Yes, he, he, he, he doesn't like when the, your honors mentioned Chang, Chang doesn't have, Chang has a $605 loss amount and it didn't have this other additional language like we have in this case that talks about the loss to the lenders being at a minimum $962,000 actual loss to SID mortgage. And then other higher amounts, depending if you're bringing any other loans in. And as Judge Bress mentioned about the, like a bank fraud, a bank fraud situation, Chang had discrete transactions where, where Chang was trying to cash fraudulent checks at a grocery store. And here, I think you've answered my question. Towards a larger loan, fraudulent loan scheme. Yeah, I was gonna say, I think you've answered my question and now, now we're running over. So thank you. And we'll hear rebuttal. Thank you, your honors. Thank you, your honors. In reality, defendants may be charged with a violation of 18 U.S. code section 1341 for a single act that constitutes the entirety of an artifice and scheme. Even jury instructions for the statute indicate that scheme is synonymous with plan rather than a wider course of conduct. Regardless, the government must still review the criminal record and statute to determine the actual crime for which petitioner was convicted. For a conviction to be legally valid, it must have identified the requisite elements and supporting facts within the record itself. By definition, anything else within the larger scheme would not be conduct for which he was convicted. And here, well, except now you're seem to be applying a categorical approach, which we don't do in this circumstance. So what, what, what the government says is, look, this plea agreement sort of said, hey, for purposes of sentencing, we'll stipulate that you only caused a $4,000 loss, but we all recognize the loss was much greater. So how can you rely on that plea agreement to say that the loss wasn't greater? Yes. So while the petitioner did agree that for purposes of the base level offense and also for restitution, that a higher amount could be considered, the conviction was only based on the improper issuance of the check, not a larger scheme. Yeah, but it's not what the conviction is based on. It's the loss caused by the conduct that was the, that led to the account, that led to the count of conviction. So you might have a better argument. The one Judge Feinerman suggested was that the conduct which he was charged with was only taking the $4,000. But you can't say we're, we're limited because we're, we're, we're limited because these plea agreements stipulated what the a defendant should be able to rely on the agreement between himself and the government in the plea agreement, especially when we're considering immigration consequences. Well, but you, but you're not making an estoppel argument. There's no record here that says the government promised me when we did this, it wouldn't be used against me in a court of law. What you're arguing is that we should strictly follow the plea agreement. My problem with that deal for purposes of sentencing, we're stipulating to $4,000 loss for purposes of sentencing, not for restitution. We're going to seek much more. And you recognize the loss was much greater. So given the specific language of that plea agreement, my question is, how can we be, how can you say it was conclusively established that the loss was $4,000? Your Honor, I think because the conviction is based on the improper issuance of the check and the loans are explicitly separate from the underlying conviction. And I believe that through the salon and also the court is not able to look beyond the explicit language in the plea agreement. If it does not specifically tie to the counter conviction. Thank you. Thank you. Let me thank both sides for their briefing and arguments in this case, which will be submitted.
judges: Hurwitz, Feinerman, Bress